```
                   UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY
_____
                              :
UNITED STATES OF AMERICA      :
                              :   Crim. No. 14-050-4 (NLH)
     v.                       :
                              :
SAEED ZAFFA                   :   OPINION
               Defendant      :
_____:
```

**APPEARANCES:**
FEDERAL PUBLIC DEFENDER'S OFFICE
By: Lisa Evans Lewis, Esq.
800-840 Cooper Street, Suite 350
Camden, New Jersey 08102
    On behalf of Defendant Saeed Zaffa

OFFICE OF THE UNITED STATES ATTORNEY
By: Patrick Askin, Assistant United States Attorney
401 Market Street, 4th Floor
Camden, New Jersey 08101
    On behalf of the United States of America

**NOEL L. HILLMAN, United States District Judge**

This matter comes before this Court upon Defendant Saeed Zaffa's Supplemental Emergency Motion for Compassionate Release [Dkt. No. 1004] and prior *pro se* Motion to be Placed on Home Confinement in Response to COVID-19 Pandemic [Dkt. No. 998], both pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A). Defendant is an inmate serving a thirteen-year sentence and currently being held at Metropolitan Detention Center ("MDC") Brooklyn, a federal administrative detention facility in Brooklyn, New York. In the instant motion, Defendant seeks immediate release to home confinement on the basis of an alleged

chronic respiratory condition (i.e. asthma), which he contends puts him at a heightened risk for complications if he contracts COVID-19. The Government opposes Defendant's motion, arguing that Defendant has not demonstrated extraordinary circumstances warranting his release, and that the Federal Bureau of Prisons ("BOP") has taken significant steps to protect the health of inmates in its custody, including those housed at MDC Brooklyn.

For the reasons stated below, Defendant's motion will be denied.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

On February 6, 2015, Defendant pleaded guilty to a two count superseding Information, on charges – namely, conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin within one thousand feet of a public housing complex, and possession of a firearm as a convicted felon - stemming from his leadership role in a violent drug trafficking gang operating in and around the Stanley Holmes housing complex in Atlantic City, New Jersey.

On May 19, 2015, the late Judge Joseph E. Irenas sentenced Defendant to 156 months' imprisonment and ten years of supervised release, pursuant to a sentence agreed to by the parties, jointly recommended to the Court, and containing an appellate waiver.

Defendant first submitted a request for compassionate release to "AW Custody" via the TRULINCS inmate email system on March 30, 2020, but to date has received no response.  On April 17, 2020, Defendant filed a *pro* se motion, and on June 4, 2020, filed a supplemental motion through counsel, seeking compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). Defendant alleges that he suffers from an asthma condition which makes him particularly vulnerable to becoming seriously ill from COVID-19 and that he is more likely to contract COVID-19 while incarcerated at MDC Brooklyn.

## II.  LEGAL STANDARD

"The recently enacted First Step Act allows a defendant to be afforded compassionate release for 'extraordinary and compelling reasons.'" United States v. Sellers, Crim. No. 10-434, 2020 WL 1972862, at *1 (D.N.J. April 24, 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).  Before bringing a motion for reduced sentence on their own behalf, defendants first "must ask the Bureau of Prisons ('BOP') to do so on their behalf, give BOP thirty days to respond, and exhaust any available administrative appeals." United States v. Raia, Civ. No. 20-1033, 2020 WL 1647922, at *1 (3d Cir. April 2, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)).  "Thus, under the First Step Act, a defendant seeking a reduction in his term of imprisonment bears the burden of satisfying both that he has (1) exhausted remedies before

3

seeking judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release." Sellers, 2020 WL 1972862 at *1 (citing 18 U.S.C. § 3582(c)(1)(A)).

At this second step, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) "if the court finds that (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission, and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." United States v. Pabon, Crim. No. 17-165-1, 2020 WL 2112265, at *2 (E.D. Pa. May 4, 2020).

### III. DISCUSSION

As the nation continues to grapple with the COVID-19 pandemic, the Court considers Defendant's Motion and its underlying concerns with seriousness.  However, as the United States Court of Appeals for the Third Circuit has articulated, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

Defendant alleges, and the Government does not dispute, that Defendant has satisfied the exhaustion requirement by submitting a request for compassionate release to the MDC Brooklyn administration via TRULINCS and having not received a response within thirty days. Therefore, the Court focuses on the second step of the analysis: whether extraordinary and compelling reasons exist to justify compassionate release.

Defendant contends that "extraordinary and compelling reasons" exist to justify compassionate release based on Defendant's diagnosis of chronic asthma, which allegedly makes him "particularly vulnerable to severe illness from COVID-19."

First, Defendant, who is 31 years old, argues that his asthma diagnosis puts him in a "high risk" group under guidance disseminated by the Centers for Disease Control and Prevention (the "CDC"). In response to the COVID-19 pandemic, the CDC published guidance on its website, advising Americans that "older adults [65 years and older] and people of any age who have serious underlying medical conditions might be at higher risk for serious illness from COVID-19."[1] The CDC states that "chronic lung disease or moderate to severe asthma,"

---

[1] Centers for Disease Control and Prevention, People Who Are at Higher Risk for Severe Illness, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (accessed on June 18, 2020).

5

particularly if not well-controlled, are underlying medical conditions that put individuals at heightened risk for severe illness if they contract COVID-19.

The Government acknowledges that Defendant's "asthma condition is concerning," but argues that a lack of concurrent risk factors (e.g. age or inclusion in another high-risk category) and a paucity of information about the severity of Defendant's condition indicates a failure to meet the "extraordinary and compelling" threshold.  The Government notes that Defendant has not been hospitalized for his condition since 2010; that his medical records indicate that his condition may be exercise-induced and/or triggered by cold temperatures; and that the records also indicate that Defendant is inconsistent in following the medication regimen prescribed by his treating physicians.

Although the Court is sympathetic to Defendant's concerns about becoming seriously ill were he to contract COVID-19, his medical history does not seem to suggest that his asthma creates an "extraordinary and compelling" risk, or that it is not capable of being controlled by careful attention to the medication and behavioral prescriptions of Defendant's physicians.

Next, Defendant argues that prison conditions at MDC Brooklyn put Defendant at heightened risk of contracting COVID-

6

19. As of June 2, 2020, two days before the supplemental motion, a total of 6 inmates and 40 staff had tested positive for the virus – an increase from 2 inmates and 5 staff members two months earlier. Defendant asserts that this almost certainly undercounts the number of infections in the facility, as testing has been limited – so much so, that Defendant himself has yet to be tested. Defendant also contends that "MDC generally lacks adequate medical infrastructure and supplies" to address the crisis; that the facility does not segregate the medically vulnerable inmates from the general population; and that inmates are not adequately quarantined or provided adequate protective materials.

The Government argues that BOP has undertaken a number of interventions, in accordance with its Coronavirus (COVID-19) Action Plan (the "Action Plan"), to minimize risk of virus transmission into and within BOP facilities. These steps include imposing restrictions on visitation, transfers, and non-essential activities; increasing medical screening of inmates and staff; and implementing changes in facility maintenance and sanitation. These steps appear to have had some effectiveness. According the BOP website, as of the date of this Opinion MDC

7

Brooklyn as 11 confirmed active cases – five inmates and six staff.[2]

The Court is mindful that the general conditions of incarceration – confinement in relatively small enclosed spaces, use of common bathrooms, rationed access to hygienic products and healthcare – make prisons potential "hot spots" for virus transmission.  However, given the relatively restrained progression of the virus within MDC Brooklyn, as compared to in the surrounding city itself, BOP's Action Plan appears to be having a positive impact.  Other district courts that have recently considered the conditions at MDC Brooklyn have also concluded that there is no evidence that inmates at the facility are at a particularly increased risk of contracting COVID-19.  See, e.g., United States v. Haney, Crim No. 19-541, 2020 WL 1821988, at *6-7 (S.D.N.Y. April 13, 2020) ("[D]espite rumors, there is no meaningful counter-evidence suggesting that the COVID-19 virus is rapidly spreading in the MDC, or anything of the kind."); United States v. Baez, Crim. No. 09-74, 2020 WL 2615928, at *3 (E.D.N.Y. May 22, 2020) ("I have no reason to believe that the MDC cannot adequately address defendant's concerns should his current symptoms escalate into something more severe"); United States v. Flores, Crim. No. 17-449, 2020

---

[2] See https://www.bop.gov/locations/institutions/bro/ (last visited June 29, 2020).

WL 2907549, at *4 (S.D.N.Y. June 3, 2020) ("On the issue of the MDC, this Court joins its colleagues in this District in being appropriately concerned about the conditions of confinement at federal facilities during the present pandemic. . . . The Court concludes on balance that the danger that Mr. Flores faces from infection with COVID-19 [at the MDC] does not amount to an extraordinary and compelling reason for granting compassionate release.").

Under the circumstances, granting Defendant's request to be released to his mother's house in Atlantic City, New Jersey could place him at greater risk of contracting COVID-19 than the risk he currently faces. As of June 17, 2020, New Jersey had more than 167,000 confirmed cases and more than 12,000 thousand deaths; of those, Atlantic County had 2,553 confirmed cases and 184 COVID-19 fatalities.[3]

The Court is sympathetic to Defendant's concerns for his health while in custody. Nevertheless, Defendant has failed to demonstrate that such concerns provide "extraordinary and compelling" reasons justifying his compassionate release.[4]

---

[3] Johns Hopkins University, Coronavirus Resource Center, available at https://coronavirus.jhu.edu (accessed on June 18, 2020).

[4] As indicated in Section II *supra*, if a court finds that "extraordinary and compelling" reasons justify compassionate release, the court must also decide whether to grant such release by weighing the sentencing factors set forth in 18

9

**IV. CONCLUSION**

For the foregoing reasons, Defendant's Supplemental Emergency Motion for Compassionate Release [Dkt. No. 1004] and prior *pro se* Motion to be Placed on Home Confinement in Response to COVID-19 Pandemic [Dkt. No. 998], both pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A), will be denied.

An Order consistent with this Opinion shall issue on this date.

DATED: June 29, 2020

At Camden, New Jersey

                                                    s/ Noel L. Hillman
                                                   NOEL L. HILLMAN, U.S.D.J.

---

U.S.C. § 3553(a), to the extent applicable.  In this case, because the Court finds that "extraordinary and compelling" reasons are not present, this Opinion does not reach this second part of the analysis.